## Commonwealth v. Peters

*J. Wesley Rowden, assistant district attorney*, for
the commonwealth.

*Jeffrey C. Peters*, pro se.

THOMAS, *P.J.*, November 2, 1989 — This matter
before us is an appeal of a summary speeding
conviction in violation of 75 P.S. §3362(a)(2), for
driving in excess of the posted speed limit. Defendant was "clocked" at 77.5 mph in a 55-mph zone
by using a measured distance and an approved
stopwatch.

## FACTUAL BACKGROUND

The commonwealth established the following
facts through the testimony of its witness, Frank
Baranyai, chief of police of the Cochranton Police
Department.

Sometime in the early part of 1989, the Cochranton Police Department purchased a hand-operated
Acutrak Speek Chronometer stopwatch manufactured by Acutrak. The instructions accompanying
the stopwatch required lines to be drawn upon the
road so the watch operator could determine when to
start and stop the watch.

The instructions used, as an example, a distance of 132 feet or 0.025 miles to demonstrate the mathematical calculations to determine the speed. However, any distance could be entered into the electronic component of the watch, which would then automatically convert seconds elapsed, in traversing a specific measured distance, to a speed in miles per hour. For some unexplained reason Chief Baranyai used 132 feet for his pre-measured course.

The Acutrak stopwatch was certified accurate pursuant to Department of Transporation regulations — 67 Pa. Code § 105.71 et seq. — and was timely tested at Rebold's Service in Harrisburg, Pennsylvania, which was an approved testing station.

On June 23, 1989, Chief Baranyai parked his vehicle near the intersection of Route 322 and Hart Road in Cochranton, Pa. The chief had at some previous time set white lines exactly 132 feet apart on Route 322 to provide him sight markers to start and stop the Chronometer as the vehicles crossed each line.

At approximately 1:54 p.m., while monitoring the speeds of various vehicles on Route 322, defendant's white Chevrolet drove toward Chief Baranyai in a northerly direction. An elapsed time of 1.16 seconds was recorded on the hand-held chronometer when the vehicle crossed the two lines. This was automatically computed by the chronometer to be a speed of 77.5 mph, well in excess of the posted speed limit of 55 mph. The chief subsequently stopped defendant's vehicle and issued him a citation for violating the posted speed limit. He was convicted at the district justice level, filed an appeal and competently represented himself at a de novo hearing.

Defendant argues that in such a short distance human reaction time in observing the exact time

the car crossed both lines and in twice pressing the chronometer timing button invites inaccuracy and doubt.

## ISSUE

Is a pre-measured course of 132 feet, for the purpose of timing traffic to determine the speed of a vehicle, a proper distance under the Vehicle Code or Department of Transportation regulations, or do the code and/or regulations require a course in excess of 132 feet due to the potential for human error in operation of the chronometer?

## DISCUSSION

Title 75 Pa.C.S. §3368(c) provides that the rate of speed of a vehicle may be timed by a police officer using a mechanical or electrical speed-timing device. Section 3368(d) requires the approval and testing of such devices by the Department of Transportation for accuracy at designated testing sites. 67 Pa. Code §105.71 et. seq. permits department-approved and certified stopwatches to time the rate of speed of vehicles and prescribes the procedures for approval and certification. The present code and present transporation regulations do not set a minimum distance for the timing of a vehicle; whereas, the previous statute required a distance of no less than one-eighth or one-quarter of a mile. See former at 75 P.S. §1002 (d)(1), P.L. 58, April 29, 1959.

Defendant postulates that the fallibility of humanity as well as the scientific truism that human reflexes are less than instantaneous, makes his speeding conviction measured over a 132-foot stretch of road and involving only 1.16 seconds grossly suspect. He cites *Commonwealth v. Alexion*, 33 Chester L. Rep. 37 (1984), which held that there

**36**

was an inherent potential for human error in a VASCAR-Plus speed timing device because of "an inevitable lag between the time the operator [of the device] thinks he sees the driver and actually trips and untrips the device." *Id.* at 38. In light of this potential of human error, the Chester County court found it necessary to establish a minimum distance requirement and turned to 67 Pa. Code § 105.95(a)(4) for guidance. This regulation was for the testing and calibration of the speed-timing device and utilizes a distance of one-tenth of a mile, or 528 feet, and the Chester County court set this as the miniumum timing distance.

However, in *Commonwealth v. Vishneski,* 380 Pa. Super. 495, 552 A.2d 297 (1980), the Pennsylvania Superior Court specifically overruled *Alexion,* stating that in *Alexion* the Chester County court improperly created a distance requirement where none existed. *Vishneski, supra.*

The Superior Court in *Commonwealth v. Ness and Smith,* 341 Pa. Super. 225, 491 A.2d 234 (1985), held in a case very similar to this one that there was no minimum distance requirement for the use of an approved stopwatch, and there was no impropriety when the officer used a pre-measured course of only 200 feet for the Ness timing and 600 feet for Smith.

The Statutory Construction Act of 1972, P.L. 1339, 1 Pa.C.S. §1501-1991, states with regard to re-enactments:

"Whenever a statute re-enacts a former statute the provisions common to both statutes shall date from their first adoption. *Such provisions only of the former statute as are omitted from the re-enactment shall be deemed abrogated, and only the new or changed provisions shall be deemed by the law in*

*the effective date of the re-enactment."* 1 Pa.C.S. §1961. (emphasis supplied)

The court in *Vishneski* went on to conclude that the omitted provisions were intended to be abrogated and held that the one-eighth of a mile distance requirement was not intended to be maintained by the legislature.

Thus, we are faced with statutory and decisional law which seemingly attributes infallibility to a police officer using a hand-held chronometer or stopwatch when measuring the speed of a car over a measured distance of his choice. In this regard, we note that section 3368(c)(4) of the Vehicle Code has a built-in "safety factor" when arrests for speeding are made by radar or electronic devices using sensor tapes laid across the highway or speed-timing devices as used here. For all speed-timing devices there is a six-mph "safety factor" before a conviction may be had. For highway sensor devices and hand-held devices there is a 10 mph "safety factor," where the speed limit is less than 55 mph — except in a school zone. Thus, the legislature recognized the possibility of human error when dealing with split-second timing. Unfortunately, the legislature has not prescribed a minimum measured distance requirement before authorized timing devices may be used.

We recently addressed this problem in the unreported case of *Commonwealth v. St. John,* Crawford County 1989-37, where the borough police used a hand-held chronometer and a measured distance of only 75 feet and charged the errant driver with a speed of 58.13 mph in a 35-mph zone. After hearing, we simply could not find that over this short distance, and allowing for the human reaction time factor, that the police officer's reported speed was a mathematical certainty. Accordingly, our verdict

was that the driver had exceeded the prescribed 35-mph limit, but we were not satisfied beyond a reasonable doubt that he was proceeding at the speed calclulated by the officer's timing device. Accordingly, we found him guilty of a 47-mph speed.

Likewise in this case, we are apprehensive about the infallible reliability of the reported speed over such a short distance. We intend no criticism of the arresting officer as he is highly trained in the use of this device, and in fact instructs other police officers in its proper use. However, if measured-distance (stopwatch) calculations are to be used as a basis for speeding convictions, and if the Vehicle Code remains silent in prescribing a mandatory minimum measured distance, what is to prevent over-zealous police officers from arbitrarily using an unreasonable short distance of their choosing? If the courts of this county were to permit police to convict for speeding at a precise mechanically calculated speed over a measured 75 feet, or the 132 feet used in the instant case, would we then invite convictions by stopwatch when the measured distance was 20, 40 or 60 feet?

In the instant case, defendant testified that he was familiar with the road and was in no great hurry. He frankly admitted he was exceeding the speed limit, and that with his driving experience he could not have been exceeding 63 mph. Defendant, without objection, presented a certificate showing he had his own speedometer checked in a timely manner by an approved testing station and at 50 and 60 mph his speedometer was reporting two mph in excess of his true speed.

We have no evidence in the case before us of the impact of the conviction of this defendant regarding points toward a suspension of his driving privileges

under 75 P.S. §1539.* Also, we note it is obvious that with the amount of the speeding fine based on speed (75 P.S. §3362), and the catastrophic-loss surcharge (75 P.S. §6506) and the ever-present emergency medical services added fine of $10 (35 P.S. §6384(a)), a conviction of a speeding charge may have serious driving-privilege, point-accumulation and financial implications for the driver. Thus, common sense dictates that it is essential that the factfinder be presented with sufficient evidence of a precise speed that leaves no room for conjecture and doubt.

We note also that we were presented with no studies or the results of human reaction tests using this type of timing device that would enlighten us and convince us beyond a reasonable doubt that the chance of the officer being mistaken by a fraction of a second in his timing was extremely remote. Simple mathematical calculation shows that had the time been 1.64 seconds instead of 1.16 seconds (a difference of 0.48 of a second) the "clocking" would have established defendant's speed at 55 miles per hour. Likewise, for a 132-foot distance clocked in 1.16 seconds, if the timing were in error in favor of or against the driver by a mere 0.16 of a second, it would represent a speed of either 68 miles per hour or 90 miles per hour. Obviously, the greater the measured distance the less impact minor human reflex error would have on the automatically calculated speed.

We conclude therefore, that we cannot find this defendant guilty of speeding at 77.5 mph in a 55-mph zone under the facts of this case, but we are convinced that he exceeded the speed limit and

---

* We do not imply that this type of evidence is admissible or relevant in the adjudication of a speeding charge.

accept defendant's testimony that he could not have been exceeding the limit by more than eight mph, and find that in fact he is guilty of a 63-mph speed in a 55-mph zone.

We are reluctant to adopt an appropriate minimum measured distance applicable to all cases of this type coming before the courts of this county absent expert opinions resulting from recognized tests. We suggest that this measured-distance problem is one for legislative correction by appropriate amendments to section 3368 or other sections of the Vehicle Code.